UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BROOKS LEWIS, on behalf of himself, all others similarly situated, and the general public,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>UBS FINANCIAL SERVICES INC., et al.,<br><br>　　　　　　UBSs. | Case No: C 10-04867 SBA<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Docket 29 |

　　Plaintiff Brooks Lewis ("Plaintiff") filed the instant putative class action against his former employer, UBS Financial Services Inc. ("UBS"), alleging violations of the California Labor Code and California's Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code § 17200. The parties are presently before the Court on Defendant UBS's motion to compel arbitration and to dismiss or stay all proceedings. Dkt. 29. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion and DISMISSES the action for the reasons stated below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. L.R. 7-1(b).

I.    BACKGROUND

   A.    FACTUAL SUMMARY

Plaintiff was employed by UBS as a financial advisor from May 2006 through April 2009. Compl. ¶ 6, 21, Dkt. 3. According to Plaintiff, UBS engages in the practice of enticing financial advisors who have an existing book of business to bring their customers to UBS through the promise of "up front bonuses" to the advisor. Id. ¶ 24. UBS typically structures such "bonuses" as employee forgivable loans ("EFLs") secured by promissory notes. Id. ¶ 37; Burenin Decl. ¶ 2 & Ex. A. If the advisor remains employed by UBS for a specified amount of time, the debt is forgiven. Id. However, if the advisor's employment is terminated for any reason before the loan is completely forgiven, the promissory note is accelerated and begins bearing interest. Compl. ¶ 37. Plaintiff alleges that this practice violates California law.

Plaintiff joined UBS in or about May 2006. Id. ¶ 6. On May 16, 2006, Plaintiff executed a Form U-4 Uniform Application for Securities Industry Regulation or Transfer ("U-4 Form") to register with the self-regulating organizations ("SROs") of The NASD, Inc. ("NASD") and the New York Stock Exchange Inc. ("NYSE"), among other entities. Burenin Decl., Ex. E, Dkt. 30-1. The U-4 Form contains an arbitration clause in which Plaintiff "agreed to arbitrate any dispute, claim or controversy that may arise between [him] and [his] firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs" with whom he registered." Id. § 15A(5).

In connection with his recruitment to join UBS, Plaintiff received a bonus of $520,488, which was structured as an EFL and secured by a promissory note to be forgiven over equal annual installments over six years. Id. ¶¶ 37, 38. In connection with the bonus, Plaintiff signed a promissory note on June 5, 2006 for an amount equal to the bonus. Burenin Decl. Ex. A. The promissory note contains an arbitration clause requiring the parties to arbitrate any disputes "concerning compensation, benefits or other terms of conditions of employment[.]" Id. at 5. The clause further states that "[a]ny such arbitration will be conducted under the auspices and rules of The NASD, Inc.," or if "the NASD is

unavailable or unable to hear the matter, then the appropriate forum is The New York Stock Exchange Inc. to the extent that forum is available." Id. Claims for injunctive relief under the promissory note are expressly excluded from the arbitration clause, however. Id.

Two years later, Plaintiff received an additional bonus of $83,753, which was again structured as an EFL secured by a promissory note in the same amount. Compl. ¶¶ 37, 38; Burenin Decl., Ex. C at 6. The promissory note contains an arbitration clause, which also includes a class action waiver:

> With the exception of claims for injunctive relief under this Agreement, Employee and UBS Financial Services agree that *any disputes* between Employee and UBS Financial Services . . . *will be determined by arbitration* as authorized by the arbitration law of the state of New York. Any such arbitration will be conducted under the auspices and rules of The NASD, Inc. . . . *To the fullest extent permitted by law, by signing this Agreement, Employee waives any right to commence, be a party to or an actual or putative class member of any class or collective action arising out of or relating to his/her employment* with UBS Financial Services or the termination of his/her employment with UBS Financial Services.

Id. at 4-5 (emphasis added). Plaintiff signed the promissory note on September 30, 2008.

In addition to the U-4 Form and the two promissory notes, Plaintiff executed two additional agreements during his employment with UBS which contain an arbitration clause. Specifically, Plaintiff signed a 2007 Compensation Plan on March 22, 2007, which requires the arbitration of "any disputes" between Plaintiff and UBS before NASD or NYSE. Burenin Decl., Ex. F at 26. On July 22, 2008, Plaintiff signed an Advisor Account Reassignment Agreement which requires the arbitration of employment related disputes before the Financial Industry Regulatory Authority *(*"FINRA") or JAMS. Id., Ex. G ¶ 5. Both the arbitration clauses in those agreements also contain a class action waiver. Id. Ex. F at 26; id. Ex. G ¶ 5.

On April 24, 2009, Plaintiff voluntarily terminated his employment with UBS. Compl. ¶ 8. At the time of his separation, Plaintiff owed $404,030.99 on promissory notes. Burenin Decl. ¶ 9. On April 20, 2010, UBS initiated an arbitration proceeding against Plaintiff before FINRA to recover the balance on the promissory notes. Burenin Decl. ¶ 10.

B.  **PROCEDURAL HISTORY**

On July 9, 2010, Plaintiff filed the instant class action in San Francisco County Superior Court, asserting four causes of action for: (1) failure to pay wages and provide accurate records in violation of the California Labor Code; (2) injunctive relief under Labor Code § 226; (3) violation of the UCL; and (4) declaratory relief.[1] Among other things, Plaintiff alleges that the EFLs constitute bonuses that UBS cannot legally recoup, and that enforcement of the promissory notes is contrary to California law. On December 10, 2010, UBS removed the action to this Court based on diversity jurisdiction.

On January 29, 2011, UBS filed a motion to compel arbitration and to dismiss or stay all proceedings pending the completion of arbitration. Dkt. 29. UBS argues that New York law applies, and therefore the Court is required to enforce the class action waiver and to compel arbitration. Id. Plaintiff counters that California law is controlling, and therefore, under Discover Bank v. Superior Court, 36 Cal. 4th 148 (2009), the Court must deem the class action waiver unconscionable and deny the motion to compel arbitration. Dkt. 34. Plaintiff also argues that the arbitration agreements are unenforceable because the fora specified in those agreements, the NASD and NYSE, no longer exist. Id. Plaintiff further maintains that his claims for injunctive relief are excluded from the arbitration agreements. Id.

During the pendency of UBS's motion, the United States Supreme Court rendered its decision in AT&T Mobility v. Concepcion, -- U.S. --, 131 S.Ct. 1740 (2011), which held that the FAA preempts California's Discover Bank rule, and prohibits states from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures. 131 S.Ct. at 1744, 1753. The Court subsequently permitted the parties to submit supplemental briefing regarding the impact of Concepcion

---

[1] On the same date that Plaintiff filed suit, he sent a letter to FINRA requesting that it dismiss UBS's claim in light of the class action that Plaintiff filed in state court. Burenin Decl. ¶ 11 & Ex. I. A FINRA case administrator placed UBS's arbitration claim on the inactive docket. Id. ¶ 12 & Ex. J.

on the pending motion. With matter now fully briefed, the motion is now ripe for adjudication.

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), any party bound by an arbitration agreement that falls within the scope of the FAA may bring a petition in federal district court to compel arbitration. 9 U.S.C. § 4. When faced with a petition to compel arbitration, the district court's role is a discrete and narrow one. "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)).

"The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. … If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." Id. "To require arbitration, [plaintiff]'s factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999). Where the claims alleged in a pleading are subject to arbitration, the Court may stay the action pending arbitration or dismiss the action. See 9 U.S.C. § 3; Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988).

## III. DISCUSSION

### A. ARBITRATION FORUM

As a threshold matter, Plaintiff contends that compelling arbitration before FINRA is inappropriate on the grounds that NASD and NYSE no longer exist and that FINRA is not expressly referenced in the respective arbitration clauses. However, Plaintiff overlooks that

the Advisor Account Reassignment Agreement specifically requires arbitration before FINRA. Burenin Decl., Ex. G. The arbitration clause contained therein provides that:

> With the exception of claims for injunctive relief or for denial of benefits under the Firm's disability or medical claims, you and UBS agree that, unless prohibited by applicable law, *any disputes between you and UBS including claims concerning compensation, benefits, or other terms or conditions of employment and termination of employment* . . . will be determined by arbitration by the arbitration law of New Jersey. *Any such arbitration will be conducted under the auspices and rules of the Financial Industry Regulatory Authority ("FINRA")*, . . .

Burenin Decl. Ex. G (emphasis added).

Moreover, the fact that the other arbitration clauses do not specify FINRA is of little moment. On July 26, 2007, NYSE and NASD were consolidated following the regulatory approval of the Securities and Exchange Commission. See 72 Fed. Reg. 42146 (August 1, 2007). Under the terms of the consolidation, NYSE's regulatory and enforcement functions were transferred to NASD. Id. The "expanded" NASD was then renamed the Financial Industry Regulatory Authority, i.e., FINRA. Id.; see Siegel v. S.E.C., 592 F.3d 147, 149 n.1 (D.C. Cir. 2010). Given that FINRA is merely the successor entity to NASD, courts have compelled arbitration before FINRA where, as in this case, the arbitration agreement specifies that arbitration will occur under the rules of NASD. See, e.g., Shammami v. Broad Street Sec., Inc., 544 F. Supp. 2d 585, 586, 588 (E.D. Mich. 2008); Suschil v. Ameriprise Financial Servs., Inc., No. 1:07CV2655, 2008 WL 974045, *1, *6 (N.D. Ohio April 7, 2008); O.N. Equity Sales Co. v. Prins, 519 F. Supp. 2d 1006, 1007 n.1 (D. Minn. 2007).

Plaintiff's reliance on this Court's decision in Adlao v. JP Morgan Chase & Co., No. C 10-04508 SBA, 2011 WL 864929, *4 (N.D. Cal. Mar. 11, 2011) is misplaced. In Adlao, the Court declined to compel arbitration because the defendant failed to provide any reasoned legal argument or cite any authority demonstrating that compelling arbitration before FINRA was appropriate where only the NASD and NYSE were referenced in the arbitration clause. The Court found that "[g]iven the lack of discussion or analysis

- 6 -

regarding the aforementioned issues, the Court cannot make a fully informed decision as to whether to compel arbitration, and if so, whether FINRA or JAMS is the appropriate forum in which the arbitration should proceed." Id.; see also Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (noting that "[o]ur adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). Thus, it is readily apparent that despite Plaintiff's claims to the contrary, the Court's decision in Adlao is limited to the specific circumstances of that case. Moreover, unlike the defendant in Adlao, UBS has, in fact, presented sufficient support for its contention that FINRA is the appropriate forum for arbitration.

### B. CLASS-ACTION WAIVER

The next issue before the Court is whether the class action waivers contained in the arbitration clauses are enforceable. UBS asserts that under New York law such waivers are not unconscionable and are therefore enforceable. Plaintiff does not dispute that UBS's agreements are enforceable under New York law, but instead argues that California law applies, and that under Gentry v. Superior Court, 42 Cal. 4th 443 (2007), class action waivers are unconscionable. However, the parties' choice of law arguments are inapposite in light of Concepcion because even if California law applies, class action waivers are not unconscionable and are enforceable.

In Concepcion, the Supreme Court reviewed the Ninth Circuit's decision in Laster v. AT & T Mobility LLC, 584 F.3d 849 (9th Cir. 2009), cert. granted sub. nom, AT & T Mobility LLC v. Concepcion, 130 S.Ct. 3322 (May 24, 2010), which had held that a class action waiver provision in an arbitration agreement was unenforceable under the test for unconscionability set forth in Discover Bank. The Supreme Court reversed Laster, and held that the Discover Bank rule was preempted because "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." Concepcion, 131 S.Ct. at 1748. In so finding, however, the Court specifically noted that the FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or

1 unconscionability,' [although] not by defenses that apply only to arbitration or that derive
2 their meaning from the fact that an agreement to arbitrate is at issue." Id. at 1746 (quoting
3 Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 685 (1996)).

4 Plaintiff argues that notwithstanding Concepcion, arbitration cannot be compelled
5 based on the California Supreme Court's decision in Gentry. In Gentry, the California
6 Supreme Court extended the Discover Bank rule to the employment context and held that
7 class action waivers in employee arbitration agreements may be unenforceable in certain
8 circumstances. Id. at 463. Gentry counsels that in assessing the enforceability of a class
9 action waiver, the court should consider: (1) the size of plaintiff's potential recovery;
10 (2) the potential for retaliation against members of a class; (3) whether there is a significant
11 risk that class members are ill-informed about their rights; and (4) whether other real world
12 obstacles would prevent the vindication of class members' rights through individual
13 arbitration. Id.

14 Though acknowledging that Concepcion abrogated Discover Bank, Plaintiff
15 nonetheless contends that Gentry remains viable because it addresses arbitration
16 agreements contained in employment contracts, while Concepcion pertains to consumer
17 contracts. Concepcion cannot be read so narrowly. Rather, the Supreme Court made it
18 clear that "[w]hen state law prohibits outright the arbitration of a particular type of claim,
19 the analysis is straightforward: The conflicting rule is displaced by the FAA."
20 Concepcion, 131 S.Ct. at 1747. Like Discover Bank, Gentry advances a rule of
21 enforceability that applies specifically to arbitration provisions, as opposed to a general rule
22 of contract interpretation. As such, Concepcion effectively overrules Gentry. See Morse v.
23 ServiceMaster Global Holdings, Inc., No. C 10-0628 SI, 2011 WL 3203919, at *3 n.1
24 (N.D. Cal. July 27, 2011) ("Concepcion rejected the reasoning and precedent behind
25 Gentry, which had applied the Discover Bank rule to certain employment cases, even if it
26 did not explicitly overrule Gentry") (Illston, J.); accord Valle v. Don Perolino Cristobal,
27 No. C 11-1489 SC, 2011 WL 3667441, at *6 (N.D. Cal. Aug. 22, 2011) (finding that
28

Concepcion overrules Gentry) (Conti, J.); Murphy v. DIRECTV, No. 07-6465, 2011 WL 3319574, at *4 (C.D. Cal. Aug. 2, 2011).[2]

Even if Concepcion did not overrule Gentry, Plaintiff has not demonstrated that the class action waiver is unenforceable under Gentry's four-factor test. See Brown, 197 Cal. App. 4th at 497-98. Here, application of the Gentry test favors enforcement of UBS's arbitration clauses. First, Plaintiffs' potential recovery is at least $404,030—the amount of the unpaid employee forgivable loan debt he seeks to recover as wages—plus interest and penalties. Second, Plaintiff not shown that UBS has retaliated against any advisor, threatened to retaliate against advisor, discouraged any advisor from making complaints, or did anything else to cause putative class members to reasonably fear retaliation. Third, there is no showing that UBS's financial advisors are ill-informed. And finally, Plaintiff has not established that there are real world obstacles that would prevent the vindication of class members' rights through individual arbitration. Indeed, financial advisors who wish to assert claims against UBS can effectively assert their rights in individual arbitration, particularly given the amounts at stake. See Borrero v. Travelers Indem. Co., No. CIV S-10-322 KJM, Slip Copy, 2010 WL 4054114, at *2 (E.D. Cal. Oct. 14, 2010) (class action waiver enforced under Gentry where plaintiff sought more than a "modest" sum and no "real world obstacles" prevented individual arbitration). Thus, the Court concludes that UBS's class action waiver is enforceable.

---

[2] The Court is not persuaded by Plows v. Rockwell Collins, Inc., -- F.Supp.2d --, 2011 WL 3501872, at *4 (C.D. Cal. Aug. 9, 2011), which concluded that Gentry was not implicitly overruled by Concepcion. Plows cites the California Court of Appeal's decision in Brown v. Ralphs Grocery Co., 197 Cal. App. 4th 489, 497-98 (2011), which reversed the denial of a motion to compel arbitration on the ground that the plaintiff failed to make the requisite evidentiary showing under Gentry to invalidate the arbitration clause. Notably, Brown did not hold that Gentry survives Concepcion. Rather, the appellate court simply assumed without deciding that Gentry is still controlling after Concepcion. Brown, 197 Cal. App. 4th at 498 (stating that "[it] does not have to determine whether, under [Concepcion], the rule in Gentry . . . concerning the invalidity of class action waivers in employee-employer contract arbitration clauses is preempted by the FAA."). Thus, Brown does not support, let alone compel, the conclusion that Gentry remains viable, notwithstanding the Supreme Court's decision in Concepcion.

#### C. STATUTORY CLAIMS

Plaintiff next contends that his statutory claims cannot be arbitrated. However, courts have held that since arbitration agreements do not weaken the protections provided by substantive law, courts may compel arbitration of statutorily-based employment claims. See E.E.O.C. v. Luce, Forward, Hamilton & Scripps, 345 F.3d 742, 750 (9th Cir. 2003); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (holding arbitration agreements involving statutory claims are enforceable under the FAA). "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 628 (1985). Hence, a district court cannot deny a motion to compel arbitration of a valid arbitration agreement on the ground that it involves statutory employment claims. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

#### D. INJUNCTIVE RELIEF

The final question before the Court is whether Plaintiff's claims for injunctive relief are subject to arbitration. Plaintiff argues that his claims for injunctive relief under § 226 of the California Labor Code (second cause of action) and the UCL (third cause of action) are not subject to arbitration because the arbitration clauses specifically exclude claims for injunctive relief. See Lifescan, Inc. v. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004) ("the court must order the parties to proceed to arbitration only in accordance with the terms of their agreement."). Plaintiff asserts that the operative agreement for purpose of the instant motion is the promissory note that plaintiff signed on September 30, 2008. That agreement states: "With the exception of claims for injunctive relief *under this Agreement*, Employee and UBS Financial Services agree that *any disputes* between Employee and UBS Financial Services, including claims concerning compensation . . . *will be determined by arbitration*." Burenin Decl. ¶ 3, Ex. C at 4-5 (emphasis added). Since Plaintiff is not seeking injunctive relief *under the terms of the promissory note*, the exclusion is inapplicable.

- 10 -

### E. DISMISSAL

Where a dispute is subject to arbitration under the terms of a written agreement, the district court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Ninth Circuit, however, has held that courts have discretion under 9 U.S.C. § 3 to dismiss claims that are subject to an arbitration agreement. See Sparling, 864 F.2d at 638; accord Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1060 (9th Cir. 2004) (holding that the district court properly exercised its discretion in dismissing an action where all claims were subject to arbitration). As discussed above, the class action waivers are enforceable, which leaves only Plaintiff's individual claims remaining in this action. Since those claims are subject to arbitration, dismissal is appropriate.

## IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT UBS's motion to compel arbitration is GRANTED and the instant action is DISMISSED with prejudice. The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated: September 30, 2011

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge